IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

| | | |
|---|---|---|
| RICHARD FLOOD, ROBERTO CANTU, TERRANCE SMITH, PATRICK FLOOD, JACQUELINE DRANKUS, EDWARD WALKER, and DAVID KURCZ, on behalf of themselves and and a class of others similarly situated, | ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| ROY DOMINGUEZ, individually and in his official capacity as sheriff of Lake County, Indiana, | ) ) | 2:08 cv 153 |
| CAREN JONES, individually and in her official capacity as former warden of Lake County Jail, | ) ) | Judge Philip Simon Magistrate Judge Paul Cherry |
| BENNY FREEMAN, individually and in his official capacity as warden of Lake County Jail, and UNKNOWN LAKE COUNTY JAIL SUPERVISORS, | ) ) ) ) | |
| Defendants. | ) ) | JURY TRIAL DEMANDED |

**FIRST AMENDED COMPLAINT**

PLAINTIFFS, by and through their attorneys, LOEVY & LOEVY, and on behalf of a class of people similarly situated, complain of Defendants, ROY DOMINGUEZ, CAREN JONES, BENNY FREEMAN, and UNKNOWN LAKE COUNTY JAIL SUPERVISORS, and state as follows:

**Introduction**

1. This is an action pursuant to 42 U.S.C. § 1983 challenging the inhumane conditions of confinement endured by detainees of the Lake County Jail in Indiana. For weeks or even months after their arrival, detainees are kept in "holding cells" where they are forced to sleep on directly on concrete. These holding cells can become so crowded that the detainees must sleep nearly on top of each other.

2. These holding cells are so unsanitary as to be life-threatening. Detainees are not provided any shower, clothing changes, or soap. One toilet is provided for up to 40 men. Human waste lies on the floors of the cells. As such, the cells are breeding grounds for dangerous infections.

3. Medical care for the detainees confined in the holding cells is nearly nonexistent. Detainees with life-threatening conditions may go weeks without receiving necessary medication. The food provided to the detainees is so lacking in nutrition that detainees' weight and health are jeopardized.

4. Those confined to the holding cells are not let out for exercise, nor for family visits. Guards do not perform regular checks on the detainees, and rarely if ever answer detainees' alarm calls.

5. Plaintiff Roberto Cantu's experience in the holding cells is illustrative. He was detained in a holding cell for 45 days with dozens of men before being sent to a regular cell designed for housing. During those 45 days, he was let out for about an hour, and he lost a quarter of his body weight. His requests for his diabetes medication were ignored so long that he suffered severe diabetic symptoms.

6. Defendants can have no legitimate justification for keeping people confined under such conditions.

**Jurisdiction and Venue**

7. The Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1367, as Plaintiffs assert claims under federal law and the state law claim arises out of the same facts as the federal claims. Venue is proper under 28 U.S.C. § 1391(b) as Defendants are

physically situated in this judicial district, and the events giving rise to the claims all occurred here.

**Parties**

8. Named Plaintiff TERRANCE SMITH is a pre-trial detainee confined in Lake County, Indiana Jail. Named Plaintiffs RICHARD FLOOD and ROBERTO CANTU are confined in Indiana's Westville Correctional Center. Named Plaintiffs PATRICK FLOOD, DAVID KURCZ, and EDWARD WALKER are not confined in an institution, and live in Illinois. Named Plaintiff JACQUELINE DRANKUS is not confined in an institution, and she lives in Indiana.

9. Defendant ROY DOMINGUEZ has been the Sheriff of Lake County throughout the class period. In that capacity he is in charge of the Lake County Corrections Division and the Lake County Jail ("LCJ"). By law, custom, and/or delegation, he has policymaking authority over the jail for the actions at issue. He is responsible for ensuring that the policies and practices of the LCJ comply with federal and state requirements for the treatment of detainees. Throughout the class period, he has had personal knowledge that the conditions of confinement challenged in this case were being imposed on LCJ detainees, and he implemented, enforced, and/or condoned these conditions. He is sued in his official and individual capacities for the challenged conditions of confinement.

10. Defendants CAREN JONES and BENNY FREEMAN have served as warden of the Lake County Jail during the class period. Throughout their respective tenures as warden they had responsibility, *inter alia*, for ensuring that the practices of the LCJ comply with federal and state requirements for the treatment of detainees. Throughout their respective tenures as warden,

3

they had or have personal knowledge that the conditions of confinement challenged in this case were being imposed on LCJ detainees, and they implemented, enforced, and/or condoned these conditions. They are sued in their official and individual capacities for the challenged conditions of confinement.

### The Lake County Jail Holding Cells

11.     Shortly after they arrive at Lake County Jail, detainees are placed in one of a number of "holding" cells. Even though the cells are only large enough to humanely hold a few people for a short time, the Defendants often pack dozens of people into a cell for weeks at a time.

12.     The cells are not actually "holding" cells, but rather where the detainees are forced to spend a large part of their detention. For weeks - or even months - most detainees will spend nearly every second of their lives in the cell. Most detainees are let out of these cells only once, for their initial court appearance.

13.      For the length of their confinement in holding, the detainees must attempt to sleep on the cold concrete floors or narrow benches of the cells. The Defendants do not provide a cot, mattress, or pillow. In the most crowded holding cells, the detainees are forced to sleep nearly on top of each other.

14.     Making sleep even more difficult for the detainees are the florescent lights shined on them 24 hours a day. The air conditioning is kept frigid, and often the detainees have nothing with which to cover themselves. These conditions can and do result in severe sleep deprivation, which poses a serious hazard to detainees' health.

15. The guards do not perform regular checks on the detainees and rarely - if ever - answer their pleas for help. To be able to communicate with any jail staff, detainees must usually wait until food trays are brought. Even when detainees activate the alert buttons in their cells, they are ignored. Detainees who are injured from fights in the cells often must wait hours for help.

16. The detainees in the holding cells receive little to no medical care, including prompt distribution of needed medicine. They do not participate in sick call, nor in the distribution of medication by the jail's medical staff.

17. One detainee developed overnight a large swollen mass that covered half of his face. The man's frantic calls for help were ignored by guards for almost a day. Finally, a medical aide arrived at the window of the holding cell. Without entering the cell to examine him, the aide informed the man that he had probably been bitten by a spider, and that she could do nothing to treat him.

18. Another man was brought into a holding cell strapped onto a stretcher. The man reported that he had been in a car accident in which he had broken his neck, ribs, and arm, and that he was in severe pain. For days, the man yelled to the guards for pain relief, but he was not removed from his stretcher nor provided any treatment.

19. The cells are extremely unsanitary. Each cell contains only a single toilet, often used by dozens of people. No soap is available, and often no toilet paper. The detainees cannot shower in the cells. They have no way to clean their clothes, and so they stay in the same dirty clothes - including the same underwear - for weeks at a time.

20. Menstruating female detainees suffer particularly from the lack of sanitary conditions. For example, Jacqueline Drankus was detained in holding with over ten women who were menstruating, and the Jail did not provide these women with sufficient numbers of sanitary supplies.

21. Making conditions even more dangerously unsanitary, some detainees who withdraw from drug addiction in the holding cells vomit and defecate on themselves and the floors. In addition, trash is spread throughout the cells. Despite this, Defendants rarely clean the cells, and do not provide the detainees means to clean the cells themselves.

22. These unsanitary conditions prime the cells for outbreaks of disease. For example, on information and belief, the drug-resistant staph infection MRSA is rampant in Lake County Jail, and has befallen detainees in the holding cells as well as in other units of the jail, including Plaintiff Edward Walker. This infection can lead to pneumonia, meningitis, and infections of the bones, blood and heart.

23. Many detainees are malnourished. Breakfast everyday consists of cereal and sometimes a Twinkie. Lunch and dinner everyday are a dab of jelly on white bread, and a thin slice of bologna on white bread. Non-meat eaters are usually given no alternative to bologna. The detainees suffer regular hunger pains, and drop weight precipitously.

24. In addition, the common practice of the guards is to slide the food trays into the holding cells and leave, letting the detainees distribute the food amongst themselves. This means that detainees who are less dominant, or who are asleep when the trays come, sometimes do not eat at all.

25.     The holding cell detainees are not released from the cells for any amount of exercise.  There is no substantial ventilation in the sealed cells, and the smells from unwashed cellmates become overwhelming.  Detainees see no natural light, only the 24-hour fluorescents.  They are kept constantly idle, and have no access to books, TV, or even paper to write on.

26.     Detainees in the holding cells are rarely if ever allowed to communicate with the outside world.  On information and belief, family visitors are turned away and told to come back when their relatives are assigned to housing divisions.  The detainees do not receive mail in the cells and they have no access to a law library.

27.     When detainees complain about the conditions of the holding cells or ask to file grievances, they are either ignored or prevented by the guards from filing grievances.

28.     Even after a detainee is finally assigned to a housing unit of the Jail, he is at risk of being sent back to the holding cells.  This is because the cells are not reserved only for the new admits to the Jail, but are also employed as punishment.  Numerous detainees have been released from the holding cells and placed in housing only to be sent back to the holding cells as punishment.

29.     Detainees are also at risk of being returned to holding if they "lose their place" in a housing division.  After Plaintiff Terrance Smith was quarantined for a severe infection, he was sent back to holding for a month rather than returned to a housing unit.  After Plaintiff Edward Walker was diagnosed with MRSA and removed from his housing unit, he was also sent to holding.  Thus, all detainees in Lake County Jail, even those who have been in housing divisions for months, are at risk of being returned to holding.

**The Named Plaintiffs**

**Roberto Cantu**

30.     Plaintiff ROBERTO CANTU is a 40-year-old Army veteran from Indiana.  He has also worked as a truck driver and as a firefighter.

31.     In July 2006, Mr. Cantu entered the Jail and was placed – like all detainees – into a holding cell, which held about 40 other men.  Mr. Cantu spent approximately 45 days in the same crowded cell, and was subjected to the conditions described in the preceding paragraphs.

32.     Mr. Cantu has Type II diabetes.  Despite that he made guards aware of his serious condition, he was never taken to the medical unit of the jail during his one-and-one-half months in the holding cell.  In fact, Mr. Cantu was forced to wait a full week to get even his diabetes medication, despite his repeated warnings to the guards that he was profusely sweating and needed the medication.

33.     Mr. Cantu weighed about 200 pounds when he arrived at Lake County Jail.  When he was finally released from holding, after 45 days, he weighed only 155 pounds.

34.     In September 2007, Mr. Cantu was booked again into Lake County Jail and was again sent directly to a holding cell.  Detention aides tested his blood sugar and found it to be at three times the normal level.  The Defendants, however, failed for nine days to give Mr. Cantu his diabetes medication despite his repeated requests.

35.     Due to the lack of medicine, Mr. Cantu went into a coma-like state, and at one point had the strength only to open and close his eyes.  The guards did not send him to the medical wing of the jail until Mr. Cantu's cellmates finally convinced the staff that Mr. Cantu was non-responsive.

**Terrance Smith**

36. Plaintiff TERRANCE SMITH, 28 years old, is a mechanic from Gary, Indiana.

37. Mr. Smith entered Lake County Jail in May 2007 and was kept in the holding cells for nearly two months before being sent to a housing division.

38. In late 2007, an infection developed on Mr. Smith's neck and quickly spread, and as a result he was quarantined on the medical floor of the jail. After eight days in quarantine, Mr. Smith was informed that he had lost his place in his housing division, and was sent back to the "holding" cells. He was forced to spend another month there.

39. During Mr. Smith's three months in the holding cells, he was subjected to the conditions described in the preceding paragraphs. Feces, and blood that was spattered during fights, stayed on the floor of the cells for lengthy periods before being removed. Other detainees sometimes took Mr. Smith's food while he slept, and he lost a significant portion of his body weight. He was denied paper or pen to write to his family or submit a grievance, and his fiancee was turned away when she came to visit him.

**Richard Flood**

40. Plaintiff RICHARD FLOOD, 45 years old, has worked as a warehouse manager and an ironworker, and has a paralegal certificate.

41. In 2007, Mr. Flood spent approximately four weeks in the holding cells. The only time he was allowed outside of the cell was for criminal hearings, which lasted minutes. For the rest of the four weeks he was confined with more than 30 people.

42. Mr. Flood was subjected to the conditions described in the preceding paragraphs. He was forced to sleep near men who were withdrawing from drug use and were vomiting and

defecating on themselves. At one point, raw sewage leaked into the cell, and the guards ignored repeated complaints for some time before it was finally removed. In addition, Mr. Flood witnessed many beatings of detainees by the guards.

**Patrick Flood**

43.     Plaintiff PATRICK FLOOD, 24 years old, has a degree from Columbia College in sound engineering, and is currently studying for additional certification in the field. He lives in Burnham, Illinois.

44.     Mr. Flood entered Lake County Jail in June 2007, and spent approximately four days in the holding cells, under the conditions described in the preceding paragraphs, with about 40 other men. He encountered many cellmates that had been there for weeks, including one man who said that he had been living in a housing division, but that the guards had sent him back to the holding cells as punishment.

**Jacqueline Drankus**

45.     Plaintiff JACQUELINE DRANKUS, 44 years old, is a medical caretaker living in Highland, Indiana.

46.     Ms. Drankus entered Lake County Jail in August 2007, and spent approximately 5 days in the holding cells, with about 30 other women, under many of the conditions described in the preceding paragraphs.

47.     While in the holding cells, Ms. Drankus contracted impetigo, a skin infection, which ultimately left her with hand and leg scars.

48. In holding, Ms. Drankus and the other female detainees suffered from severely unsanitary conditions. They were not provided with enough toilet paper or female sanitation supplies to meet their needs, nor were they provided showers.

49. Ms. Drankus observed female detainees suffer from being denied necessary medication in holding. For example, one woman went into an apparent diabetic shock, and another woman had seizures.

**Edward Walker**

50. Plaintiff EDWARD WALKER, 55 years old, lives in Chicago, where he works as a cook.

51. Mr. Walker entered Lake County Jail in November 2007, and for 11 days was detained in a holding cell that contained up to 60 detainees at a time. Mr. Walker was held under the conditions described in the preceding paragraphs, including that feces and urine covered the floor of his cell, and some detainees had open sores and were vomiting and shaking due to drug and alcohol withdrawal.

52. Mr. Walker has medical problems for which he requires medication, of which he informed Jail staff immediately upon entry. However, Mr. Walker was denied his medication for 80 days, despite his repeated additional requests.

53. In March of 2008, Mr. Walker discovered that he had contracted MRSA in the Jail. Jail staff sent Mr. Walker back to the holding cells, while he was still suffering from the infection, and for the next five days Mr. Walker lived in a single small cell with about 40 other men. As of 2009, Mr. Walker still suffers from MRSA.

**David Kurcz**

54.     Plaintiff DAVID KURCZ, 30 years old, lives in Northfield, Illinois and works as a cook in a restaurant.

55.     From May 2006, Mr. Kurcz was detained in the Jail on approximately three occasions.  Each time, he was kept in holding cells under conditions described in the preceding paragraphs.  Mr. Kurcz's longest continuous stay in a holding cell was two weeks, during which time he was detained with approximately 40 other men.

**Class Action Allegations**

56.     Richard Flood, Roberto Cantu, Terrance Smith, Patrick Flood, Jacqueline Drankus, Edward Walker and David Kurcz bring this action on their own behalf and on behalf of a class of those similarly situated, pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedures.

57.     Plaintiffs seek to represent a class consisting of the following people:

> All detainees of Lake County Jail who were confined in the Jail's holding cells at anytime in or after May 2006.

58.     The named Plaintiffs estimate that the class numbers in the thousands, making joinder of all members impractical.  There are currently about 1,000 detainees housed at Lake County Jail.  All detainees booked into the jail are initially confined in the holding cells.

59.     Common questions of law and fact exist as to all class members.  Among these common question are:

    a.     whether any legitimate governmental purpose exists to confine the class members in the holding cells;

   b. whether any legitimate governmental purpose exists to maintain in the holding cells the above-described conditions;

   c. whether the conditions of confinement in the holding cells violate class members' rights under the Fourteenth Amendment to the United States Constitution;

   d. whether the Lake County Sheriff's Department maintains an express policy, custom and/or widespread practice of violating class members' rights under the Fourteenth Amendment through the conditions under which Lake County confines the class members;

   e. whether the policymakers of Lake County Sheriff's Department instituted the conditions of confinement, condoned such conditions, and/or were deliberately indifferent to them; and

   f. whether Defendants DOMINGUEZ, JONES, or FREEMAN failed in their supervisory responsibilities to have avoided the violations of class members' rights.

  60. The claims of the named Plaintiffs are typical of the claims of the class. The named Plaintiffs were confined in the Lake County Jail holding cells and subjected to dangerous, unconstitutional conditions. They seek to prove that the conditions violated their rights, and that Defendants DOMINGUEZ, JONES, FREEMAN, and as-yet unknown supervisors are liable as a result.

  61. The named Plaintiffs will fairly and adequately represent the interests of the class. They have retained counsel experienced in class action, civil rights, and jail conditions litigation.

  62. The further requirements of FRCP 23(b)(3) are met in this cause in that questions of law and fact common to members of the class, examples of which are described above,

predominate over any individual issues that may exist. In addition, a class action would be the most fair and efficient method of adjudicating the class members' claims and is therefore the superior method of adjudication.

### Count I - Class claims pursuant to 42 U.S.C. §1983
### for violations of the Fourteenth Amendment

63.    Each Paragraph of this Complaint is incorporated herein.

64.    There is no justification, including no legitimate governmental purpose, for the conditions under which detainees are confined in the Lake County Jail holding cells.

65.    The Defendants have violated Plaintiffs' and class members' rights under the Fourteenth Amendment by consciously subjecting Plaintiffs RICHARD FLOOD, ROBERTO CANTU, TERRANCE SMITH, PATRICK FLOOD, JACQUELINE DRANKUS, EDWARD WALKER, DAVID KURCZ, and the other members of Class I, and/or being deliberately indifferent, to the grossly inhumane and dangerous conditions of confinement described above, thereby depriving the Plaintiffs and class members of the minimal civilized measure of life's necessities, creating a substantial risk of serious harm to Plaintiffs and class members, and in fact causing serious harm to the Plaintiffs and class members.

66.    The policies, customs and/or widespread practices of the policymaker(s) of Lake County Sheriff's Department are the moving force behind and the cause of these violations. In addition, Defendants DOMINGUEZ, JONES, FREEMAN, and as-yet unknown Lake County Jail supervisors instituted the unconstitutional conditions, condoned the unconstitutional conditions, and/or knew about the unconstitutional conditions, had supervisory responsibility to prevent and/or stop them, and failed to do so.

## Count II - State Law Claim
## Indemnification

67.     Each Paragraph of this Complaint is incorporated herein.

68.     In Indiana, public entities are directed to pay judgments of civil rights violations to which present or former public employees are liable, including such civil rights violations as described in this Complaint.  IC §34-13-4-1, Personal Civil Liability Under Civil Rights Laws of Employee Acting Within Scope of Employment.

69.     Defendants DOMINGUEZ, JONES, FREEMAN, and as-yet unidentified Lake County agents are or were employees of Lake County, and acted willfully, wantonly and within the scope of their employment in committing the acts and omissions described herein.

## Requests for Relief

WHEREFORE, Plaintiffs respectfully request that this Court:

-   Certify this case as a class action pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure, and appoint the undersigned as class counsel pursuant to Rule 23(g).

-   Award against Defendants costs, attorneys fees, and damages, and grant any other relief this Court considers just and proper.

**Jury Demand**

Named Plaintiffs RICHARD FLOOD, ROBERTO CANTU, TERRANCE SMITH, PATRICK FLOOD, JACQUELINE DRANKUS, EDWARD WALKER, and DAVID KURCZ respectfully demand trial by jury on behalf of themselves and the Class Members on all issues so triable.

RESPECTFULLY SUBMITTED,

S/ Samantha Liskow
Attorneys for Plaintiffs

Arthur Loevy
Michael Kanovitz
Jon Loevy
Samantha Liskow
LOEVY & LOEVY
312 North May St.
Suite 100
Chicago, IL 60607
(312) 243-5900