**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION**

| | | |
|---|---|---|
| RICHARD FLOOD, ROBERTO CANTU, TERRANCE SMITH, PATRICK FLOOD, JACQUELINE DRANKUS, EDWARD WALKER, and DAVID KURCZ, on behalf of themselves and a class of others similar situated, | ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | 2:08 CV 153  PPS  PRC |
| ROY DOMINGUEZ, individually in his official capacity as sheriff of Lake County, Indiana CAREN JONES, individually and in her official capacity as former warden of Lake County Jail, BENNY FREEMAN, individually and in his official capacity as warden of Lake County Jail, and UNKNOWN LAKE COUNTY JAIL SUPERVISORS, | ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

**OPINION AND ORDER**

Before the Court is Plaintiffs' Motion for Class Certification. [DE 56.] Plaintiffs are a group of pretrial detainees who were detained in the holding cells of the Lake County Jail in conditions that they claim were unconstitutional. They have sued the Lake County Sheriff, the warden and former warden of the Lake County Jail, along with the jail itself, claiming that the Sheriff and others were deliberately indifferent to the unconstitutional conditions of the holding cells. They seek to represent a class of individuals detained in the holding cells for more than 24 hours. Because the Plaintiffs have demonstrated that the proposed class meets the requirements of Federal Rule of Civil Procedure 23, their Motion for Class Certification is granted.

## BACKGROUND

When pretrial detainees arrive at Lake County Jail they are booked into the Jail and then placed into one of seven holding cells. The purpose of the holding cells is to detain arrestees while the Jail determines where they will be permanently housed. Because the holding area is temporary, the cells are not equipped to house detainees on a long-term basis. They have concrete floors, concrete benches around the perimeter, and a single toilet. There are no beds or mattresses in the holding cells. The seven holding cells range in size from 15 by 15 to 20 by 30 feet but are otherwise the same.

The Plaintiffs brought this action under the due process clause of the Fourteenth Amendment on behalf of all detainees held in Lake County Jail holding cells anytime on or after May 2006. They seek to certify a class of detainees housed in the holding cells for more than 24 hours. According to the Plaintiffs, the class could potentially exceed 16,000 members. In support of their motion for class certification, the seven named Plaintiffs rely on the facts alleged in the First Amended Complaint, the affidavits from 39 potential class members describing their experiences in the holding cells, data from the Jail's computerized database, and the deposition testimony of Jail employees.

The Plaintiffs identify a number of conditions in the Lake County holding cells that they say are the result of either Jail policies or widespread practices. First, Plaintiffs claim that detainees are consistently left in overcrowded holding cells for long periods of time. [DE 56 at 5.] According to the Jail's records supervisor, Kim Parker, detainees "normally" spend between 24 and 48 hours in holding cells, though Parker admits that it is sometimes longer. [DE 66-2 at 5 (Parker Affidavit); DE 72-1 at 3-4 (Parker Deposition).] Her review of the Jail's records found

that all of the named Plaintiffs were held in Lake County holding cells at least 24 hours. [DE 66 at 8-10.] Sergeant John Dragomer, the Jail's Rule 30(b)(6) representative, testified that he saw individuals detained in the holding cells for "up to a week or more." [DE 56-1 at 78 (Dragomer Deposition Vol. II).] And, although the Jail admits that the largest holding cell was designed to hold no more than 30 detainees [DE 56-2 at 45-46, 125 (Dragomer Deposition Vol. I)], the Jail has no policy limiting the number of detainees that may be housed in each holding cell. [*Id*. at 59-60.]

These facts accord with the claims of the seven named Plaintiffs and the testimony of the 39 other putative class members. For example, the named Plaintiffs and other class members report being held in the holding cells for periods ranging from 3 to 45 days. [DE 56 at 6.] And according to their declarations, the 39 individuals were on average confined in a holding cell alongside 32 other detainees, which makes for cramped quarters. [*Id*. at 5.]

In addition, the Plaintiffs claim that the Jail has a widespread practice of keeping holding cells in conditions that are unsanitary and inhumane, and which differ substantially from those in the Jail's general population. The Plaintiffs assert that the Jail does not provide holding cell detainees any hygiene items, such as toothpaste, toothbrushes, or soap. [*Id*. at 8; DE 56-1 at 54-55.] And, according to the Plaintiffs, the conditions in the holding cells are unsanitary – the walls and floor are often covered with bodily fluids; each holding cell has one toilet, which is often backed up and rarely has toilet paper; and Jail personnel do not provide detainees any means to clean the cells themselves. [DE 56 at 9-10.]

The Plaintiffs also claim that holding cell detainees are provided inadequate food. The meal portions are too small consisting of a small cereal box and milk for breakfast and a bologna

sandwich and a jelly sandwich with a 4 oz. juice for lunch and dinner. [*See* DE 56-4 (Exhibit 4).] What's more, because of the manner in which meals are delivered to the holding cells, detainees are forced to fend for themselves to retrieve whatever food they can muscle away from others. [*Id*. at 12.] Finally, holding cell detainees are not permitted to leave the cell for exercise and generally may not receive visitors. [*See* 56-1 at 43; 56-1 at 96.] These conditions are substantially different than those in the Jail's general population. In fact, the Jail admits that detainees in the Jail's general population are sometimes sent back to the holding area for "rule violations." [*Id*. at 79-80.]

The Plaintiffs' core complaint, however, is that the Jail has a policy of not providing detainees beds, mattresses, or other bedding on which to sleep. [DE 56 at 7; 56-2 at 45.] Instead, all detainees are forced to sleep directly on concrete benches or floors. [DE 56-2 at 45-46.] And because the holding cells are overcrowded and dirty, they are often forced to sleep practically on top of one another, and on unsanitary and filthy surfaces. [DE 56 at 7.] These conditions are aggravated by the consistently cold temperature in the holding cells, the lack of ventilation, and the bright florescent lights constantly illuminating the holding cells. [*Id*. at 7, 11; DE 56-1 at 50; 56-2 at 58.] As a result, the Plaintiffs assert that any detainees held in the Jail's holding cells for over 24 hours are deprived of any meaningful sleep.

## DISCUSSION

Plaintiffs seek certification of the following proposed class: "All detainees of the Lake County, Indiana Jail who were confined in the Jail's holding cells for more than 24 hours on or after May 13, 2006." The Jail argues for denial of class certification because the proposed class fails to meet any of the Fed. R. Civ. P. 23 requirements.

Motions for class certification must meet the requirements of Rule 23 of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 23. Rule 23 establishes two hurdles for class certification. First, the action must satisfy all four elements of Rule 23(a): numerosity, commonality, typicality, and adequacy of representation. Second, the proposed class must satisfy at least one of the three provisions of Rule 23(b). *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997). Plaintiffs seek certification under Rule 23(b)(3), which requires them to demonstrate that common questions of law or fact predominate over any questions affecting only individual class members and that a class action is a superior method of adjudicating the controversy. The party seeking class certification bears the burden of demonstrating that the requirements of Rule 23 are met. *Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 596 (7th Cir. 1993).

For purposes of a motion to certify a class, the court does not reach the merits of the complaint. *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974) ("In determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met."). But the Seventh Circuit has instructed district courts to make "whatever factual and legal inquiries are necessary under Rule 23." *Szabo v. Bridgeport Mach., Inc.*, 249 F.3d 672, 676 (7th Cir. 2001).

## A. Rule 23(a) Requirements

### 1. Numerosity

Rule 23(a)(1) – the numerosity prong – requires that the class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). A court must rely on simple

common sense when determining whether a class size meets the numerosity requirement. *See Redmond v. Uncle Julio's of Ill., Inc.*, 249 F.R.D. 290, 294 (N.D. Ill. 2008). Generally speaking, when the putative class consists of more than 40 members, numerosity is met, but there is nothing magical about that number. *See Ingram v. Corporate Receivables, Inc.*, No. 02 C 6608, 2003 WL 21982152, at *2 (N.D. Ill. August 19, 2003) (citing *Swanson v. American Consumer Indus.*, 415 F.2d 1326, 1333 n.9 (7th Cir. 1969)); *Lucas v. GC Serv.'s L.P.*, 226 F.R.D. 337, 340 (N.D. Ind. 2005).

According to the Jail's own records, the seven named Plaintiffs and the 39 declarants were detained in Lake County's holding cells for longer than 24 hours, and all claim to have been subjected to overcrowded and unsanitary conditions while housed in the holding cells. These 46 individuals alone are sufficient to meet the numerosity requirement. In any event, according to the Plaintiffs, the Jail's records demonstrate that over 16,000 former pretrial detainees may meet the proposed class definition. Indeed, the Jail stated that it processes 15,000 detainees into the Jail each year, and these detainees normally spend 24 to 48 hours in holding. Thus, joinder is impracticable, and the numerosity requirement is readily met.

**2.    Commonality**

Under Rule 23(a)(2), "questions of law or fact common to the class" must be present before a class is certified. Fed. R. Civ. P. 23(a)(2). "A common nucleus of operative fact is usually enough to satisfy the commonality requirement of Rule 23(a)(2)." *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992) (citation omitted). This requires at least one question of law or fact common to the class. *See Blihovde v. St. Croix County, Wisconsin*, 219 F.R.D. 607, 616 (W.D. Wis. 2003); *Adams v. R.R. Donnelley & Sons*, 2001 WL 336830, at *5 (N.D. Ill. April 6,

2001) ("Rule 23(a)(2)'s commonality requirement does not require that all or even most of the issues in the litigation be common issues; one common issue is enough.").

The Plaintiffs argue that the commonality requirement is easily established because each member of the putative class will have to prove the same facts and the same legal theories to prevail on their conditions of confinement claim, namely: the Jail has a policy of keeping detainees in holding cells in excess of 24 hours without bedding; the Jail has a widespread practice of overcrowding, poor sanitation, and improper feeding in the holding cells; these conditions are unconstitutional for those held over 24 hours; and the Jail's policymakers were deliberately indifferent to the widespread practice.

The Jail counters by first noting the potential variation in damages. But that problem exists in any jail conditions case. Indeed, the Seventh Circuit has been clear that variations in damages will not defeat class certification. *See Arreola v. Godinez*, 546 F.3d 788, 800-01 (7th Cir. 2008). So that is not a reason alone to deny class certification.

The Jail also attempts to recast Plaintiffs' case as one for the denial of medical care. It claims that determining whether each Plaintiffs' injuries resulted from the Jail's deliberate indifference is a factbound inquiry, which requires that Plaintiffs show an objectively serious medical need and that the Jail acted with a "sufficiently culpable state of mind" in interfering with the detainees' medical needs. The Jail's attempt to recast Plaintiffs' claim is curious. Plaintiffs' beef is with the conditions of confinement, not the denial of medical care. So the Jail's discussion of the standards for proving a denial of medical care is neither here nor there. The Jail simply ignores the fact that the Plaintiffs' core complaint – that the Jail's policy of keeping detainees in holding cells for over 24 hours without a mattress or bed is unconstitutional

– is common to the entire class. *See Blihovde*, 219 F.R.D. at 616 ("[A] single common issue is sufficient to satisfy [the commonality] requirement").

In sum, the class will advance the same legal theories to establish liability. Each class member must prove that the Jail's policies and widespread practices caused the unconstitutional conditions of confinement in the holding cells. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). Therefore, the commonality requirement is met.

### 3. Typicality

The next issue concerns whether the claims of the class representative are typical of those of the class as a whole. *See* Fed. R. Civ. P. 23(a)(3). A claim is typical of the class if "it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *Keele v. Wexler*, 149 F.3d 589, 595 (7th Cir. 1998). The typicality requirement is closely related to the commonality requirement under Rule 23(a)(2), *Rosario*, 963 F.2d at 1018; indeed, the Jail relies on the same arguments to defeat both requirements. But just like the commonality inquiry, the typicality requirement is met because the Plaintiffs challenge the same jail practices and will rely on the same legal theories to prove their claim. This controls despite any factual distinctions that may arise. *De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983) ("[S]imilarity of legal theory may control even in the face of differences of fact.").

### 4. Adequacy of Representation

Under Rule 23(a)(4), the adequacy of representation requirement mandates that both the class representative and counsel for the named plaintiff zealously represent and advocate on behalf of the class as a whole. *See Retired Chicago Police Ass'n*, 7 F.3d at 598. As the class

representative, a plaintiff must not have "antagonistic or conflicting claims with other members of the class," and must have a "sufficient interest in the outcome of the case to ensure vigorous advocacy[.]" *Sebo v. Rubenstein*, 188 F.R.D. 310, 316 (N.D. Ill. 1999). Also, counsel for named plaintiffs must be experienced and qualified and generally be able to conduct the litigation. *See Gammon v. GC Servs. Ltd. P'ship*, 162 F.R.D. 313, 317 (N.D. Ill. 1995).

The Jail does not challenge the qualifications of Plaintiffs' counsel. Instead, the Jail argues that the "honesty and trustworthiness" of the named Plaintiffs merits denial of this requirement. In support, it cites to the affidavit of Kim Parker, the Jail's records supervisor. Parker reviewed the Jail's Log Books, spiral bound books detailing detainee movement to or from a holding cell, and claims that the named Plaintiffs actually spent much less time in holding than they allege in the First Amended Complaint. So the Jail asserts that because the number of hours the Plaintiffs claim they spent in holding cells conflicts with the Jail's Log Books, the named Plaintiffs' "respective credibility [is] . . . highly suspect." [DE 66 at 14.]

But the Jail is challenging the validity and credibility of its own records. During discovery, the Jail produced data from its electronic records management system (but not the Log Books), which also tracks the movement of individuals detained in the Jail, and the Plaintiffs relied on it to help determine how many hours each named Plaintiff spent in holding. Moreover, the Jail has provided no evidence verifying the accuracy of Parker's review of the Log Books, aside from her say so.[1] Yet, while the discrepancy between the Log Books and the Plaintiffs' claims will certainly be an issue moving forward, it has little bearing on whether the

---

[1] The Plaintiffs filed a motion to strike this affidavit. [DE 78.] Because the issues raised in this motion are irrelevant to the motion for class certification, the motion to strike is denied.

named Plaintiffs will adequately represent the class. *See Levie v. Sears, Roebuck & Co.*, 496 F. Supp. 2d 944, 950 (N.D. Ill. 2007) ("Credibility is not a requirement of a class representative, and whether or not a plaintiff is credible is irrelevant to that person's ability to be a class representative."). And the Jail provides no evidence that the named representatives have an insufficient stake in the outcome of the case or that they have claims conflicting with those of other class members. Thus, the named class Plaintiffs will adequately represent the class, and the Rule 23(a) requirements are met.

**B.     Rule 23(b)(3) Requirements**

In addition to meeting class certification requirements under Rule 23(a), Plaintiffs' proposed class must satisfy the requirements of one of the three subsections of Rule 23(b). Here, Plaintiffs propose that certification is appropriate under Rule 23(b)(3). Rule 23(b)(3) requires that (1) questions of law or fact common to the members of the class predominate over any questions affecting only individual members; and (2) a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Fed. R. Civ. P. 23(b)(3); *Szabo,* 249 F.3d at 676.

**1.     Predominance**

Under the predominance requirement of Rule 23(b)(3), common questions of law or fact must predominate, but they need not be exclusive. *See Scholes v. Moore*, 150 F.R.D. 133, 138 (N.D. Ill. 1993) (citation omitted). In determining whether common questions predominate, courts look to whether there is a "common nucleus of operative facts." *Ziemack v. Centel Corp.*, 163 F.R.D. 530, 535-36 (N.D. Ill. 1995) (citation omitted).

The Jail argues there are simply too many individual issues at stake to lump all of these

plaintiffs in a single class. It claims that determining liability and damages would require an individual analysis of each plaintiff's circumstances and conditions within the holding cell. This would include, for example, how long each plaintiff spent in the holding cell, the number of other detainees in the holding cell with each plaintiff, the specific circumstances causing any long periods in holding, and whether each plaintiff was housed in unsanitary conditions. So, the argument goes, because all of these individual issues demand individual analysis, common issues do not predominate.

In support, the Jail relies on *Smith v. Sheriff of Cook County*, 2008 WL 1995059 (N.D. Ill. May 6, 2008) and *Wrightsell v. Sheriff of Cook County*, 2009 WL 482370 (N.D. Ill. Feb. 19, 2009). In these cases, the plaintiffs sought to represent a class of individuals denied adequate dental care at Cook County Jails. Both courts found class certification inappropriate because of the fact specific nature of the plaintiffs' claims. As the court in *Smith* noted, each plaintiff would have to show that he required dental care, he did not receive adequate care, he suffered significant injury, and the injury was causally related to inadequate care – thus, "[e]ach plaintiff's case would necessarily be different." 2008 WL 1995059, at *2; *Wrightsell*, 2009 WL 482370, at *3 (the reasonableness of delaying dental care would vary depending on the seriousness of the dental emergency).

But once again, this is not a denial of medical care case. So *Smith* and *Wrightsell* have no bearing here. While it is true that "cases involving personal injury and inadequate medical care are particularly fact specific" and thus generally unsuitable for class certification, *Smith*, 2008 WL 1995059 at *2, "[c]ourts routinely address conditions of confinement claims in class actions." *Dunn v. City of Chicago*, 231 F.R.D. 367, 377 (N.D. Ill. 2005); *see, e.g., Vodak v. City*

*of Chicago*, 2006 WL 1037151, at *11 (N.D. Ill. Apr. 17, 2006). Indeed, courts have found class treatment appropriate where "*certain conditions* [of confinement] common to all . . . are unlawful." *Dunn*, 231 F.R.D. at 377 (emphasis added). This is especially true where the conditions stem from jail policies or practices that are applied uniformly to all prisoners. *See Rahim v. Sheahan*, 2001 WL 1263493, at *13-14 (N.D. Ill. Oct. 19, 2001); *see also Young v. County of Cook*, 2007 WL 1238920, at *7 (N.D. Ill. Apr. 25, 2007) ("When a class challenges a uniform policy or practice, the validity of that policy or practice tends to be the predominant issue in the ensuing litigation."); *Blihovde*, 219 F.R.D. at 620 (same).

Here, many of the conditions of confinement are common to all class members. For example, the lack of bedding, consistently cold temperature in the cells, lack of certain personal hygiene items, lack of exercise, and small meal portions apply to all detainees held in Lake County holding cells. Based on the evidence before the Court, each of these conditions of confinement is the result of a uniform policy or practice by the Jail. And the class will rely on these facts to prove that the conditions in Lake County holding cells are sufficiently serious and the Jail was deliberately indifferent to the suffering caused by these conditions. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994). So, unlike *Smith* and *Wrightsell*, liability will not depend on each plaintiffs' individual circumstances because the class members will largely rely on the same issues of fact and law to support their claim.

Nothing in *Harper v. Sheriff of Cook County*, 581 F.3d 511 (7th Cir. 2009) mandates a different result. In *Harper*, the plaintiff brought suit after being detained in the Cook County Jail for seven hours after his wife had posted his bond. He sought to represent a class of individuals unconstitutionally "processed into the Cook County Jail . . . while that person, or someone acting

on his (or her) behalf, sought to post cash bond." *Id*. at 513. The district court granted class certification, but the Seventh Circuit reversed. The Court held that the constitutionality of detaining individuals after their bond had been posted depends on "whether the length of the delay between the time the Sheriff was notified that bond had been posted and the time that the detainee was released was reasonable in any given case." *Id*. at 515. These were individual issues that depended on how long each detainee was held after bond was posted and the particular justifications for any delay. *Id*. So liability would hinge on individual determinations. Also, the only potentially common issue – whether it was reasonable to assign a jail identification number to a detainee before allowing him to be released on bond – did not predominate because the plaintiff's identification number was not central to the litigation. *Id*. In contrast to *Harper*, the common issues here – lack of bedding, no hygiene items, no exercise, and inadequate food – are fundamental to the Plaintiffs' claim and allegedly gave rise to the injuries they suffered.

Also, in *Harper*, the Court held that determining the constitutionality of the defendant's actions depended on how long the individual was detained after posting bond and the justifications for delaying his release. Notably, the plaintiff in *Harper* did not limit the proposed class by the length of time detainees were held after they posted bond. In this case, however, the Plaintiffs argue there are no penal justifications for keeping detainees in custody for over 24 hours without a bed, hygiene items, exercise, or adequate food, especially since detainees in the Jail's general population are not subjected to these conditions. So, for example, whereas in *Harper*, the reasonableness of holding an individual for *seven hours* after posting bond on a busy Friday night would require a substantially different analysis than for a person detained for *seven*

*days* after posting bond, here, class members can reasonably establish liability based on common issues regardless of any justifications advanced by the Jail.

This case is similar to *Dunn v. City of Chicago*. In *Dunn*, the plaintiffs sought certification of a class of detainees who were held in interrogation rooms for more than sixteen hours and were allegedly subjected to inhumane conditions. 231 F.R.D. at 370. The plaintiffs claimed they were "at the whim" of officers and detectives for food, water, and access to bathroom facilities, and they were forced to sleep on short, metal benches. *Id*. at 370-71. The defendants opposed certification by arguing that common questions did not predominate because detainees were treated differently in the interrogation rooms. For example, the defendants submitted evidence that some detainees had been provided food, water, and access to bathrooms, while others had not. *Id*. at 372, 377. The court certified the class nonetheless because whether some detainees were "more or less deprived" did not prevent the court from analyzing the shared deprivations suffered by all the detainees. *Id*. at 377.

Similarly, in *Schilling v. Transcor America*, LLC, 2010 WL 583972, at *3 (N.D. Cal. Feb. 16, 2010), the court certified a class of approximately 16,000 pretrial detainees and prisoners alleging an unconstitutional conditions of confinement claim. According to the plaintiffs, they were subjected to inhumane conditions during 24 hour transports because they were deprived of access to regular food, water, and bathrooms, and they were forced to sleep sitting in their seats. *Id*. at *1. The plaintiffs sought to certify a class of "all pretrial detainees and prisoners who were transported . . . and forced to remain in the transport van for more than 24 hours." *Id*. at *3. The defendants argued that the plaintiffs failed to show predominance because their claims involved individualized inquiries as to whether each class member was

adequately provided food, fluids, exercise, hygiene, and medical care. *Id.* at *9. Moreover, the number of days each plaintiff spent in transport varied. *Id.* at *1. In certifying the class, however, the court held that, despite "any factual differences in how class members were treated . . . all inmates are restrained during [24 hour] transports and not provided with a 'rest over night.'" *Id.* at *10. Certification was proper because the defendants' policy that deprived detainees from sleep was sufficient to establish liability and could be determined on a classwide basis. *Id.*; *see also Vodak*, 2006 WL 1037151, at *11 ("The varying lengths of duration do not create individual issues sufficient to prevent classwide determination of Plaintiffs' § 1983 claim related to their conditions of confinement.").

Just like *Dunn* and *Schilling*, the conditions of confinement common to all detainees held in Lake County Jail holding cells for over 24 hours are sufficient to establish liability. If it is unconstitutional to force a detainee to sleep under bright lights on a cold, concrete floor and not provide certain personal hygiene items, exercise, or adequate food for over 24 hours, it is unconstitutional for all detainees despite the other conditions of confinement. That some detainees were subject to even harsher conditions does not prevent the Court from resolving on a classwide basis whether the shared deprivations violated the Constitution. Also, all the Plaintiffs will have to prove that the issues that are not the result of a uniform policy or custom (*e.g.*, the overcrowded and unsanitary conditions) were widespread practices within the holding cells.[2]

---

[2] In fact, the Plaintiffs provide evidence this is the case. For example, 38 of the 46 potential class members report sharing a holding cell with at least 30 other detainees, and some were held with over 50 other detainees. [DE 56-5 (Exhibit E).] Even assuming all of these individuals were confined in the largest cell (which of course they weren't), the holding cells are overcrowded even by the Jail's definition. [*See* DE 56-2 at 45-46, 125 (largest cell meant to hold 30 detainees; "[w]hen they increase the number to 30 individuals, that's when it becomes a concern to me").] Moreover, the Jail admits it has no policy limiting the number of detainees in

*See Monell*, 436 U.S. at 691. In any event, as in *Dunn* and *Schilling*, the named Plaintiffs' core complaint – that detainees held for over 24 hours without a bed are deprived of any meaningful sleep – is common to all class members and sufficient in itself to warrant class certification.

Moreover, many of the variations in the detainees' conditions of confinement differ by a matter of degree, rather than kind. These factual variations, including the length of a particular class member's detention (assuming of course, that it exceeds 24 hours), speak only to damages, not liability. And differences in damages alone will not defeat class certification. *Arreola*, 546 F.3d at 801. "Rule 23 allows district courts to devise imaginative solutions to problems created by the presence in a class action litigation of individual damages issues." *Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 661 (7th Cir. 2004). I may, for example, divide the class into sub-classes to determine damages. In any event, because common issues predominate, the need for individual damages determinations will not defeat class certification.

### 2. Superiority

Under Rule 23(b)(3), a class action must also be superior to other available methods for the fair and efficient adjudication of the controversy. *Szabo*, 249 F.3d at 676. The Jail matter-of-factly states that because "individual issues predominate . . . class certification would not be superior method for resolving the matters in controversy." [DE 66 at 15.] But the inverse is true – because common issues do predominate, a class action is the superior method of adjudicating this action. *See Vodak*, 2006 WL 1037151, at *13 (superiority generally flows from predominance). As discussed previously, this dispute contains a set of legal and factual issues

---

holding cells. [*Id*. at 59-60.] And as for the conditions within the cell, 42 of the 46 potential class members testify that bodily fluids, such as blood, vomit, and feces, were present on the floor or walls of the holding cell. [*See* DE 1 (First Amended Complaint); 56-5 (Exhibit E).]

that are shared by the members of the class, and class certification is more efficient than multiple individual suits at dealing with these common questions. Indeed, requiring each class member to bring individual actions would waste time and money. *See Markham v. White*, 171 F.R.D. 217, 224 (N.D. Ill. 1997). Also, because many of the potential class members would likely recover very little in damages, they are unlikely to prosecute individual claims without the cost-sharing efficiencies offered by a class action. Accordingly, a class action is a superior method of litigating this case.

## CONCLUSION

Therefore, because the proposed class meets the requirements of Federal Rule of Civil Procedure 23(a) and (b)(3), Plaintiffs' Motion for Class Certification is **GRANTED**. [DE 56.] Plaintiffs' Motion to Strike is **DENIED** as moot. [DE 78.]

The class is defined as follows:

All detainees of the Lake County, Indiana Jail who were confined in the Jail's holding cells for more than 24 hours on or after May 13, 2006.

**SO ORDERED**.

ENTERED: July 14, 2010.

s/ Philip P. Simon<br>
PHILIP P. SIMON, CHIEF JUDGE<br>
UNITED STATES DISTRICT COURT