**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | | |
|---|---|---|
| RICHARD FLOOD, ROBERTO CANTU, TERRANCE SMITH, and PATRICK FLOOD, on behalf of themselves and a class of others similarly situated, <br>     Plaintiffs, <br><br> v. <br><br> ROY DOMINGUEZ, individually and in his official capacity as sheriff of Lake County, Indiana, *et al.*, <br>     Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) | CAUSE NO.: 2:08-CV-153-PPS-PRC |

**OPINION AND ORDER**

This matter is before the Court on Plaintiffs' Motion to Compel Responses to Certain Discovery Requests [DE 119], filed by Plaintiffs on November 8, 2010. Defendants filed a response on December 10, 2010, and Plaintiffs filed a reply on January 13, 2011.

On February 19, 2010, Plaintiffs issued interrogatories and document requests to the three named Defendants in this case, Roy Dominguez, Caren Jones, and Benny Freeman. Defendants eventually provided initial responses to the written discovery. After reviewing the responses, counsel for Plaintiff identified deficiencies in the responses and communicated them to counsel for Defendants. On July 22, 2010, counsel for all parties participated in a discovery conference that lasted approximately 1.5 hours. Following the conference, Defendants supplemented responses as follows: on August 4, 2010, Defendant Dominguez served a First Amended Response to Plaintiffs' First Set of Interrogatories; on August 4, 2010, Defendant Freeman served responses to Plaintiffs' First Set of Interrogatories; on August 5, 2010, Defendant Jones served responses to Plaintiffs' First Set of Interrogatories; and on August 6, 2010, Defendants served their First Amended Responses

to Plaintiffs' Second Set of Document Requests. Overall, the parties have worked together to make progress on written discovery issues. However, Plaintiffs seek Court intervention to resolve certain outstanding disputes, as set forth in this Order.

## A. Detainee Database

The Jail maintains a database that contains, among other things, a listing of all detainees, their contact information, and information about their movements throughout the Jail. Plaintiffs requested the database in the initial round of discovery, in December 2008. In April 2009, Plaintiffs received from Defendants a CD containing detainee information from the beginning of the class period to April 2009. In July 2010, Plaintiffs' counsel reminded Defendants that Plaintiffs need an updated database containing information from April 2009 to the present, and counsel for Plaintiffs has followed up on this request on July 16, 2010, July 20, 2010, September 21, 2010, and October 25, 2010. Counsel for Defendants has not lodged any objection to producing the database and has agreed to have an updated database produced; however, no updated database has been provided.

In the response brief, counsel for Defendants explains the challenges of mining the raw data from the Spillman Jail Management System utilized by Defendants and converting the data into a useable format. In the response brief, Defendants represent that the lieutenant at the Jail responsible for mining and compiling the data would return from an extended vacation on January 1, 2011, and would be able to provide the updated database within 10-15 working days. At the time of Plaintiffs' response on January 13, 2011, the updated database had not been produced. Finding the motion on this discovery well taken and noting the agreement of the parties, the Court grants the motion to compel as to the updated database and orders Defendants to produce to Plaintiffs on or before **February 28, 2011**, the updated database.

### B. Department of Justice Investigation

Two years into the class period, in 2008, the Department of Justice ("DOJ") undertook an investigation into conditions at the Lake County Jail, including an inspection on December 15-17, 2008. In December 2009, the DOJ produced a letter documenting its investigative findings as a result of that inspection, after which Jail and County officials communicated and negotiated with the DOJ about the documented issues that have since been resolved through settlement. In February 2010, Plaintiffs requested of Defendants all documents "relating to the Department of Justice's investigations into the Lake County Jail, including but not limited to all documents relating to the investigation documented in the DOJ's CRIPA letter of December 7, 2009." Defendants responded that Defendants Freeman and Jones do not have possession of any such documents. As to Defendant Dominguez, he objected, asserting that privileges would apply to the requested materials, represented that a privilege log would be forthcoming, but has not produced a privilege log or the requested discovery.

In response to the instant motion, Defendant Dominguez argues that, because the December 7, 2009 investigative letter threatened litigation against Lake County under CRIPA, any and all communications and documents exchanged between counsel, or between the respective counsel and their clients, are protected from any disclosure by either the attorney-client and/or the work-product privilege. Defendant now also objects that the request for "all" documents, without any limitation, is vague and overbroad as it fails to identify any specific categories of documents sought that may be relevant to the Plaintiffs in this action and fails to identify whose communications are being sought other than identifying "any to all" employees or agents of Lake County and the DOJ. For example, the DOJ investigative letter involves medical and mental health care provided to inmates

3

throughout the entire Lake County Jail, whereas the Plaintiffs in this class action have alleged complaints about conditions in the Holding Tanks of the Lake County Jail and not conditions in the units where the general population of the jail is housed.

The Court finds that this discovery request is relevant in so far as it requests documents related to the conditions of the Holding Tanks of the Lake County Jail. Therefore, the Court grants the motion to compel to the extent that any relevant documents exist that are not covered by privilege and orders that Defendant Dominguez serve this discovery on Plaintiffs on or before **February 28, 2011**. To the extent that Defendant Dominguez claims a privilege as to any of this discovery, Defendant Dominguez shall produce a privilege log for those documents to Plaintiffs on or before **February 28, 2011**. A party's failure to produce a requisite privilege log may result in the waiver of any privilege. *See* Fed. R. Civ. P. 26(b)(5) ("When a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the party must: (i) expressly make the claim; and (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed–and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim."); *Sandra T.E. v. S. Berwyn Sch. Dist. 100*, 600 F.3d 612, 623 (7th Cir. 2010); *MSTG, Inc. v. AT&T Mobility, LLC*, No. 08 C 7411, 2011 WL 221771, at * 10 (N.D. Ill. Jan. 20, 2011) (citing cases). Defendant's failure to comply with this aspect of the Court's Order may result in waiver of any applicable privilege as to these documents.

### C. Training

Plaintiffs requested by interrogatory information about the specific training provided to Jail employees on the subject matter of this case.

4

Interrogatory No. 11 provides:

> Please identify and describe all training provided to Lake County employees or agents in the past ten years regarding booking detainees into the Jail, classifying detainees into the general population of the Jail, and the holding, supervision, and provision for the needs of detainees incarcerated in the Jail's holding cells specifically. Please include in this answer the dates of all such training, when the training was provided (for example, whether it was a roll call training), and the manner of presentation (for example, a streaming video or a class instruction).

Defendant Dominguez's response to Interrogatory No. 11 provides:

> I have no personal knowledge relating to the specific training provided to correctional officers as oversight of such training is performed by the Warden and his/her supervisory personnel in the Jail.
>
> Warden James Tatge and Deputy Warden Jennifer Travis (Malenshek) have advised that Correctional Officers who are assigned to booking and classification must successfully complete four (4) weeks of on-the-job training under an existing correctional officer with experience in booking or classification. Officers in booking and classification may also attend outside seminars in their specialty when they are available and conform with an officer's schedule.

Def. Br., Exh. 2.

Plaintiffs argue that Defendant Dominguez's answer lacks information about what the four weeks of "on-the-job training" consists of and lacks information about the seminars that holding cell officers take. Defendants argue that they have properly answered Interrogatory No. 11, each stating in their answers that they have no knowledge relating to the specific training received by correctional officers in booking and classification. In reply, Plaintiffs only pursue the interrogatory response of Defendant Dominguez, arguing that he, as the representative of the Sheriff's Department, failed to provide a comprehensive response. Finding this additional information relevant and within the scope of Interrogatory 11, the Court grants the motion as to this discovery requested of Defendant Dominguez only, and orders Defendant Dominguez to serve a supplemental

5

response to Interrogatory 11 to cure the deficiencies by explaining what the four weeks of "on-the-job training" consisted of and by providing specific information regarding the seminars that holding cell officers take.

### D. Changes to the Jail's Policies, Procedures, and Training Programs

Plaintiffs tendered Interrogatory 12 in February 2010:

> 12. Please identify and describe any and all changes made in the last ten years to Lake County's policies, practices, and training programs relating to booking detainees into the Jail, classifying detainees into the general population of the Jail, and the conditions of confinement of the Jail's holding cells. For each such change, if any, please describe it, describe when it occurred, describe who decided to make the change, and describe whether and how the Lake County employees or agents were made aware of the changes identified above, including but not limited to how they were informed of the new policies and the dates on which all steps were taken to inform the employees of the policy change(s).

Defendant Freeman responded:

> RESPONSE: I am aware of the following sections of the Lake County Corrections Division Policy and Procedure Manual [that] were adopted in September 23, 2002, relating to booking and classification procedures:
>
> Booking - Polices related to Booking Procedures adopted in 2002:
> 2-203 (2)
> 2-203 (6)
> 2-204 - Intake
> 2-204 - Visiting
> 2-206 (B)
> 3-316 (D)
> 7-709 - Personal Property Storage
> 8-803 - Logs
> 8-811 - Inmate Movement Report
> 9-918 - Procedural Guidelines
> 9-922 - Follow-up Measures
> 13-1301 - Procedural Guidelines
> 13-1302 - Frisk Search
> 13-1303 - Inmate Admission Procedures
> 13-1304 - Inmate Property Processing
> 13-1307 - Inmates Use of Telephones (Admissions)
> 13-1310 - Inmates Issue Clothing and Bedding

13-1312 - Inmate Personal Property
13-1313 - Surveillance of Holding Cells
13-1315 - Segregation of Female Arrestees
13-1319 - Special Needs Inmates
14-1401 - General Food Service Operations
Chapter 15 - Sanitation and Hygiene
Chapter 16 - Healthcare
Classification - Polices related to Classification adopted in 2002:
13-1303 - Inmate Admission Procedures
13-1304 - Inmate Property Processing
13-1306 - Inmate Orientation
13-1307 - Inmates Use of Telephones (Admissions)
13-1308 - Juveniles
13-1309 - Shower of Arrestees
13-1310 - Inmates Issue Clothing and Bedding
13-1311 - Confiscation of Personal Clothing
13-1312 - Inmate Personal Property
13-1315 - Segregation of Female Arrestees
13-1316 - Classification and Orientation of Inmates
13-1317 - Intake Classification and Medical Screening of Inmates
13-1318 - Inmate Monitoring System
13-1319 - Special Needs Inmates
13-1320 - Release and Transfer Procedures
14-1401 - General Food Service Operations
Chapter 15 - Sanitation and Hygiene
Chapter 16 - Healthcare

The only other policies would be memos or Directives issued by the Warden, Deputy Warden of Security Craig Ponton, Deputy Warden of Operations, Jennifer Travis (Malenshek), or possibly the Deputy Warden of Personnel and Training, Diane Price. These Directives were previously forwarded to Plaintiffs' counsel on March 20, 2009, and/or April 1, 2009.

On or around November- December of 2008, a new policy manual was issued by the Jail Staff that incorporated policies banning tobacco and smoking inside the jail implemented by a general order of Sheriff Dominguez several years prior.

Any other records and information regarding policies, practices and training relating to booking detainees into the Jail, classifying detainees into the general population of the Jail and the conditions of confinement, if any, would be in the possession of the Deputy Wardens and the Classification and Booking Sergeants and/or the turn supervisors listed in #10 above.

> Changes in policy would are communicated to correctional officers by their respective shift supervisors.

Plaintiffs argue first that Defendants failed to provide the requested information about who was responsible for each policy or procedure change and second that Defendant Freeman referred Plaintiffs to an unspecified collection of documents that have not been produced to Plaintiffs. Defendants respond that Freeman identified all the policies during the relevant time period and that the only changes were made in 2008 relating to banning tobacco and smoking inside the jail. Defendants also respond that the revised policies have been disclosed in discovery. Finally, Defendants respond that Defendant Freeman identified any and all persons that "may" have knowledge of any policy changes applicable to the booking and classifications areas.

However, Defendants have not identified who was responsible for each change. Accordingly, the Court grants the motion as to this request and orders Defendants to provide a supplemental response on or before **February 28, 2011**, to Interrogatory No. 12, (1) identifying the people responsible for each of the listed policy changes and (2) either producing all responsive documents referenced in the discovery response or clarifying that all responsive documents have been produced to Plaintiffs.

### E. Meaning of "Delay in Classification" and "Special Needs"

In response to Interrogatories Nos. 17, 18, and 20, Defendants used the terms "Delay in Classification" and "Special Needs." Plaintiffs ask that Defendants provide supplemental responses to each interrogatory, describing what a "delay in classification" means for each and, for Interrogatory No. 18, describing what the term "special needs" means. In response, counsel for Defendants describes Defendant Dominguez' definition of these terms. Because the definition of the terms should be provided in the form of a sworn discovery response, the Court grants the motion

as to this requested discovery, and orders Defendants to provide a supplement response on or before **February 28, 2011**, to Interrogatories Nos. 17, 18, 20, defining the terms "delay in classification" and "special needs" as previously used in response to those interrogatories.

## CONCLUSION

Based on the foregoing, the Court hereby **GRANTS** Plaintiffs' Motion to Compel Responses to Certain Discovery Requests [DE 119] and **ORDERS** Defendants to provided supplemental discovery responses consistent with this Order on or before **February 28, 2011.**

SO ORDERED this 9th day of February, 2011.

                                            s/ Paul R. Cherry
                                         MAGISTRATE JUDGE PAUL R. CHERRY
                                         UNITED STATES DISTRICT COURT

cc:    All counsel of record