IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| RICHARD FLOOD, ROBERTO CANTU, TERRANCE SMITH, PATRICK FLOOD, JACQUELINE DRANKUS, EDWARD WALKER, and DAVID KURCZ, on behalf of themselves and a class of others similarly situated, | ) ) ) ) ) ) | Cause No. 2:08-CV-00153-PPS-PRC |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| ROY DOMINGUEZ, individually and in his official capacity as sheriff of Lake County, Indiana, CAREN JONES, individually and in her official capacity as former warden of Lake County Jail, BENNY FREEMAN, individually and in his official capacity as warden of Lake County Jail, and UNKNOWN LAKE COUNTY JAIL SUPERVISORS, | ) ) ) ) ) ) ) ) ) ) ) | Judge Philip P. Simon<br><br>Magistrate Judge Paul R. Cherry |
| Defendants. | ) ) ) | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION
FOR PRELIMINARY APPROVAL OF PROPOSED CLASS SETTLEMENT**

Plaintiffs, on behalf of themselves and a class of others similarly situated, respectfully submit this memorandum of law in support of their motion for preliminary approval of the proposed class action settlement. The motion should be granted for the following reasons:

**Introduction**

Plaintiffs and Defendants have negotiated a settlement in principal by which the Defendants will pay $7.2 million to compensate the class members. Plaintiffs and Class Counsel recommend this settlement as being in the best interests of the class and, therefore, move the Court for preliminary approval. A copy of the Settlement Agreement is attached as Exhibit 1 to the accompanying Motion.

Plaintiffs did not choose to recommend this settlement lightly. Class Counsel has litigated this case for over four years, investing in excess of 7,000 attorney hours, deposing dozens of witnesses on both sides, interviewing hundreds of class members, and engaging in numerous rounds of written discovery. As such, we are very knowledgeable about the strengths and weaknesses of the case, the time frame necessary to litigate the case to final judgment (one way or the other) and to appeal. In light of all the investigation and litigation, Plaintiffs are satisfied that this settlement is very advantageous to the Class and that it would be unwise to forgo it.

In accordance with the necessary procedures when settling class claims, Plaintiffs request that the Court enter an order that (1) preliminarily finds that the settlement is fair to the class; (2) certifies the proposed Settlement Class under Rule 23; (3) provides for sending notice to the class members per the proposed Notice Plan; and (4) sets a date for final approval of the Settlement Agreement on or after December 17, 2012.

## I.     FACTUAL SUMMARY AND PROCEDURAL HISTORY

*The Complaint*

The four original Plaintiffs filed this case in May 2008 seeking to represent a class of detainees confined in the Lake County Jail holding cells. Complaint at ¶45; Dkt. 1. The Complaint was amended in February 2009, adding three class representatives. Dkt. 28. Plaintiffs alleged a host of conditions that they claimed were inhumane either alone or in combination. Id. at 4-7. Defendants did not file a motion to dismiss, so there has been no ruling in this case on the constitutionality of the challenged conditions.

*Contested litigation over class certification*

Plaintiffs moved for class certification in April of 2009, after conducting significant discovery towards that end including document discovery, depositions of jail employees, and

database analysis, and class member interviews. Following numerous extensions of time for the Defendants, and additional discovery and briefing, the Court certified a class under Rule 23(b)(3) in July of 2010. Flood v. Dominguez, 270 F.R.D. 413 (N.D. Ind. 2010).

The Court agreed that at least some of the challenged conditions were common to the class members and that all class members would have to prove that "the Jail has a policy of keeping detainees in holding cells in excess of 24 hours without bedding; the Jail has a widespread practice of overcrowding, poor sanitation, and improper feeding in the holding cells; these conditions are unconstitutional for those held over 24 hours; and the Jail's policymakers were deliberately indifferent to the widespread practice." Id. at 418. The Court further held that the class action method was superior to requiring the class members to pursue individual claims because of the difficulty of proving the policy claims and because many of the class members would "likely recover very little" in damages. Id. at 422. The Court acknowledged, and later affirmed, that in the event Plaintiffs were able to prevail in proving liability, the case could require individual damages trials for each class member. Id. ("damages may very well require individual determinations"). Defendants sought leave from the Seventh Circuit to appeal that decision and, after leave was denied, brought an unsuccessful motion to reconsider.

*Discovery and other motion practice*

Before, during, and after the multiple rounds of briefing on class certification, Plaintiffs engaged in exhaustive discovery and investigation. To marshal evidence on the commonality of and persistence of the challenged conditions, Plaintiffs' counsel interviewed over 300 class members about their experiences while in the holding cells. Each class member spoke personally with an attorney from Plaintiffs' counsel's firm. Affidavit of Attorney Julie Thompson ("Thompson Affidavit") (attached as Exhibit 2) at ¶14.

Most of these interviews were for a massive affidavit-gathering project in which Class Counsel selected the class members at random, weighting the selections to ensure that they would be evenly spread out over the course of the six years of the class period and fairly apportioned between male and female class membership, in order to marshal proof representative of the experiences of the tens of thousands of class members detained during the class period. In total, Class Counsel obtained over 120 affidavits from the class members in this fashion, 81 of which were from the randomly selected class members. An additional 86 affidavits were prepared by counsel following an interview with a class member, and sent out for signature, but were not returned by the class member. Thompson Affidavit at ¶¶14-17.[1]

Defendants noticed all of the affiants for deposition. It was amidst these affiant depositions that the parties came to the table in a serious way and were able to resolve the case. In total, the parties completed depositions of 43 class members (including the class representatives), all of whom were prepared for deposition and represented at their depositions by Class Counsel. In Class Counsel's estimation, these affidavits and depositions were instrumental in helping the parties to fairly evaluate the commonality of the alleged conditions and the related questions of fact outlined in the Court's opinion and order on class certification. Thompson Affidavit at ¶¶18-21.

Plaintiffs also conducted a multitude of sets of oral and written discovery on the issues of deliberate indifference and proof of official liability for the policy and practice claim. Class Counsel deposed numerous policymakers, representatives, and staff of the Sheriff's Department, including former Sheriff Dominguez and current Sheriff John Buncich. In total, Plaintiffs took 20 Defendant and defense-witness depositions. Thompson Affidavit at ¶¶4-6.

---

[1] Throughout discovery, Class Counsel also responded to hundreds of class-member initiated contacts requesting information about the case. There were approximately 185 letters and over 300 calls, each of which received a response from Class Counsel.

Document discovery was also extensive. Class Counsel served nine separate rounds of written discovery, many of which were propounded on multiple defendants (meaning that there were more than nine actual sets of discovery and more than nine responses to be analyzed and addressed). The requests were broad, albeit necessarily so, and arriving at a fair set of responses did not always go smoothly. Over the course of the case, Class Counsel wrote defense counsel 108 letters, many of which were addressed to issues of discovery compliance, as well as many more preliminary and follow-up emails on the same topics. These efforts resulted in over a dozen bankers boxes of documents, all of which Class Counsel reviewed and analyzed. Thompson Affidavit at ¶¶7-9. There was also substantial motion practice associated with procuring discovery, and other issues in the case. In total, Plaintiffs filed 17 motions, six responses, and four replies. Thompson Affidavit at ¶10.

Another important piece of Plaintiffs' work on the case involved database discovery and expert analysis. Class Counsel obtained and analyzed (with expert assistance) almost 40 Excel files of information in order to determine the membership of the class and to prepare proof of the detainees' lengths of detention in the holding cells, as well as to establish overcrowding. In addition, the analysis was complicated by the fact that Defendants contested the validity of the Jail's own data and so Class Counsel had to investigate Defendants' claims about their paper records and how to "proof" the electronic database using these records. Thompson Affidavit at ¶¶11-13. The data analysis occurred at multiple junctures during the litigation. For example, there was analysis to establish the numerosity of the class for purposes of certification. Following certification, Plaintiffs performed analysis to identify members for purposes of class notice. Class Counsel also analyzed the database so as to draw representative samples for the affidavit project and, finally, crunched the numbers as the parties discussed settlement.

## II.   OVERVIEW OF THE PROPOSED SETTLEMENT AGREEMENT

The Settlement Agreement and attachments are included as Exhibit 1 to the Plaintiffs' Motion for Preliminary Approval of Class Action Settlement, filed herewith. The general summary of the proposed Settlement Agreement is as follows:

### A.   The Settlement Class

The proposed settlement class is defined as follows:

> All persons confined in the Lake County Indiana Jail at any time from May 13, 2006 to February 1, 2012 and who were confined in the holding cells for a period of twenty-four (24) hours or longer.

The Court has already certified substantially the same class for litigation purposes,[2] finding that the class satisfied the requirements for a Rule 23(b)(3) class. Dkt. 96. As discussed further in Section V, it follows that the same class definition also satisfies Rule 23(b)(3) for purposes of a settlement class.

The parties estimate that there are approximately 30,000 members in the class. The parties are in the process of preparing a final agreed spreadsheet regarding the class members from the Jail's "Spillman" database. Under the Settlement Agreement, this spreadsheet will be considered conclusive as to class membership, length of a class member's detentions, and the number of separate detentions of a class member.

Claim rates in class actions rarely approach a sizeable fraction of the class membership and often dip into the single digit percentages. Class Counsel has been working with the claims administrator to put together a notice plan and claims process that will encourage claim submission. It is very difficult to estimate the claims rate we should expect from the Settlement Class. However, based on historical averages and the particulars of this Class and Settlement

---

[2] The class that the Court previously certified did not contain the end date of the class period of February 1, 2012.

payments, the administrator expects approximately a 15% claims rate. Affidavit of Christina Peters-Stasiewicz ("Peters-Stasiewicz Affidavit") (attached as Exhibit 3) at ¶4.

### B. The Settlement Fund

The proposed Settlement Agreement creates a $7.2 million fund to settle the case. The settlement fund must pay for compensation to class members as well as all of Plaintiffs' expenses for the litigation: attorneys' fees and out of pocket costs, incentive awards to the Named Plaintiffs and affiants, and the costs of class notice and settlement administration.

#### 1. Method of distribution to the claimants

The entire fund, net of expenses, will be distributed to those class members who submit a valid and timely claim form. There is a 90-day claim period as well as a three-week cure period for defective claims.

Persons submitting valid and timely claims will be paid *pro rata* based on a point formula corresponding to the claimant's longest period of detention in the holding cells during the class period. The points will be assigned as follows:

-From 24 up to 48 hours = 1 point

-Greater than 48 up to 72 hours = 3 points

-Greater than 72 up to 120 hours = 6 points

-Greater than 120 hours = 12 points

Claimants detained multiple times will be scored only once, using their longest detention during the class period, but they will receive a single extra point to reflect the fact that they were detained more than once in the holding cell for more than 24 hours.

The valid and timely claim forms will be scored by the claims administrator using the agreed spreadsheet based on the Jail's Spillman database.

Without knowing the claims rates in each of the four detention categories it is not possible to give an estimated payment amount with reasonable certainty. Nevertheless, for purposes of illustration, if we assume that the claims administrator's estimate of a 15% claims rate applies evenly to each of the four detention categories and that the fund net of fees and expenses is approximately $4 million, then class member payments would be approximately:

-From 24 up to 48 hours = $300

-Greater than 48 up to 72 hours = $900

-Greater than 72 up to 120 hours = $ 1,800

-Greater than 120 hours = $3,600

The proposed Settlement Agreement provides that Settlement Class members will receive their awards within 30 days after the entry of a final order adjudicating any objections the Claimants have to the determination of their class membership and assigned points, and assuming there is no appeal.

## 2. Attorneys fees and out of pocket costs

The fund is also to cover Class Counsel's attorneys' fees and reimbursement for the costs they have advanced.

Defendants have agreed not to oppose a fee based on (a) a risk multiplier of 2 times Class Counsel's lodestar, or (b) 40% of the fund, whichever is greater. Class Counsel has invested approximately 7,000 hours of attorney time, which equates to a lodestar of approximately $2.3 million.  This number will continue to increase as Class Counsel handles final approval of the settlement and settlement administration, and we estimate five hundred more hours will be required, even assuming that the process goes smoothly and there is no appeal.  If the case is appealed, then Class Counsel may incur many additional hours.

Because the total of Class Counsel's lodestar, enhanced by the 2 times risk multiplier, already exceeds 40% of the fund, and will grow by some as yet unknown sum, Class Counsel intends to limit their fee petition to 40% of the fund so that the class members can have certainty about the fee when evaluating the settlement.

In accordance with Seventh Circuit procedures in common fund recovery cases, Class Counsel must petition for their fee, which remains subject to Court approval.

Class Counsel will also seek reimbursement of approximately $50,000 in out of pocket costs that they have advanced for this litigation to pay for items such as service of process, witness fees, depositions, travel, and expert fees. Separately, Class Counsel has incurred costs for things like photocopies and electronic research which they will cover as part of their overhead and not seek reimbursement from the fund.

### 3. Incentive Awards to the Plaintiffs and the Affiants

The Settlement Agreement allows for incentive awards of $25,000 to each Named Plaintiff, $100 to each affiant who sat for a deposition, and $50 for each affiant who did not sit for a deposition, all subject to Court approval.

### C. Settlement Administration

The Parties have agreed to a claims administrator, A.B. Data. Both Parties believe that A.B. Data will provide professional, competent and neutral service. The Parties have agreed to the procedures and documents that A.B. Data will use to validate the claims. The total cap-on-cost of the administration will not exceed $150,000.00, subject to Court approval.

### D. Notice to the Class

The Parties have also created a Notice Plan in conjunction with A.B. Data that the parties support as the best practicable plan for informing class members of the Settlement Agreement,

and of their rights to submit a claim for payment, exclude themselves from the settlement, or object to the proposed settlement. The Notice Plan involves mailing individual Notice Packets, publishing notice in various print media, posting notice inside the Lake County Jail, and establishing a website and call center for the settlement.

The Notice Packets will be sent via first class mail to the last known address of each potential class member found in the Lake County Jail's "Spillman" software database. Before sending the Notice Packets, the claims administrator will research the last known address for all individuals, utilizing LEXIS NEXIS and the U.S. Postal Service's NCOA address updating service. The claims administrator will also update the mailing list for people currently held in the Indiana Department of Corrections facilities, or who are currently serving parole through that agency. The Notice will also be available in Spanish.

For Settlement Class members whose Notice Packet is returned as undeliverable but for whom the claims administrator subsequently obtains a current address, the claims administrator will re-mail the Packet to the current address.

Notice will also appear in the following publications: *Times of Northwest Indiana, Post-Tribune, Gary Crusader, Hoy* (a Spanish language daily newspaper)*, Chicago Defender*, and *Prison Legal News* (a monthly magazine with a large subscribership of incarcerated people). The Published Notice will run in each of the publications as a quarter page ad in the main body of the paper (not the classified section) in two print cycles. Additionally, a blank Claim Form will be published in *Prison Legal News* during two print cycles. The Published Notice will also be posted inside the Lake County Jail holding cells and general housing areas in locations accessible and visible to detainees.

10

Finally, the claims administrator will maintain a designated website on which the Notice and other settlement documents will be posted. Individuals will be able to download a Claim Form from the website. As discussed in Section IV, below, the parties' Notice Plan satisfies the requirements of due process and apprises Settlement Class members of their rights to submit a claim, to exclude themselves from the Settlement Agreement, and/or to file an objection.

### E. Opt-outs and Objections

Settlement Class members will have 90 days from the mailed notice date to request exclusion from the Settlement Classes or to file an objection to the Settlement Agreement.

### F. Reporting Requirement

For a period of one year, the Lake County Council will promptly provide to Plaintiffs the information packets sent to the United States Department of Justice Civil Rights Division.

### III. THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL

"In deciding whether to preliminarily approve a settlement, courts naturally favor the settlement of class action litigation." Isby v. Bayh, 75 F.3d 1191, 1196 (7th Cir. 1996) (citations omitted).

Before final approval of the proposed Settlement Agreement, the Court will need to evaluate the following factors as they may apply: (1) the strength of plaintiffs' case compared to the terms of the proposed settlement; (2) the likely complexity, length and expense of continued litigation; (3) the amount of opposition to settlement among affected parties; (4) the opinion of competent counsel; and (5) the stage of the proceedings and the amount of discovery completed." In re AT & T Mobility Wireless Data Services Sales Litigation, 270 F.R.D. 330, 346 (N.D. Ill. 2010). These are the same factors to be considered at the final approval stage, Synfuel Technologies, Inc. v. DHL Express (USA), Inc., 463 F.3d 646, 653 (7th Cir. 2006), but, at the

preliminary approval stage a court need review these factors so as to satisfy itself that the settlement is within "the range of approval" and can perform the review in summary fashion. Kessler v. Am. Resorts Int'l's Holiday Network, Ltd., 2007 WL 4105204, at *5 (N.D. Ill. Nov.14, 2007) ("Although [the 'fair, reasonable, and adequate'] standard and the factors used to measure it are ultimately questions for the fairness hearing that comes after a court finds that a proposed settlement is within approval range, a more summary version of the same inquiry takes place at the preliminary phase."). Nevertheless, the inquiry should not be undertaken lightly, and any aspects of a settlement that cannot be finally approved should prevent preliminary approval. See In re AT & T Mobility Wireless Data Services Sales Litigation, 270 F.R.D. 330, 346 (N.D. Ill. 2010).

Addressing factors (1) and (2), Class Counsel believes that the Plaintiff's case is a strong one and that the Court's certification decision would be upheld on appeal. That said, there is a good chance that Plaintiffs would need to proceed to a jury trial on liability, or at least some aspects of liability, and that an unfavorable jury may find against the class. Moreover, the process associated with that resolution, even if successful, is a long one, including an appeal and then a further damages process. Thus, while we estimate a good chance of success for the class, the first opportunity for any class member to receive a recovery is at least several years down the road. We believe that most class members would prefer a sure and prompt payment to the chance of a payment later down the road. Moreover, there is no guarantee that the individual class members would do better at trial than they would under this settlement. The settlement provides a substantial amount of money to compensate the class members. We expect that in individual trials some would do better but that many may do worse, or receive nothing if they do not take careful efforts to participate in the damages trial process (showing up for a deposition,

completing written discovery, etc.). In a class of this size, attrition alone would deprive many of a recovery even in the event that class proves liability. Moreover, the delay associated with individual damages trials would be extreme and unfair, with those who cannot get their trial early in the process likely waiting years. All of these factors inform the strength of the Class's hand even given the merits of their substantive claim.

The third factor is not relevant at the preliminary approval stage. Objections are not due to be submitted until after preliminary approval and notice.

Factors (4) and (5) are intertwined here because, unlike many class actions which settle quickly, this case has been thoroughly litigated. At this point, Class Counsel has conducted hundreds of class member interviews and scores of deposition, analyzed vast amounts of data and documents, and given no quarter in pursuing Defendants for the necessary discovery to prove the case. Based on all of that work, Class Counsel are in a good position to evaluate the likelihood of success and the likely damages awards and, based on those considerations, fully endorse the settlement. If Class Counsel believed there was a significant upside to continuing the litigation rather than accepting this settlement, they are fully incentivized to keep fighting, given that the law entitles them to a percentage of the recovery as fees. We are endorsing the settlement because we are satisfied that the settlement strikes the right balance between incurring additional risk to class members and the likely payoff.

Put simply, this settlement is well within the range of approval. The Agreement was the result of truly adversary negotiations, and was reached only after, and as a result of, extensive and hard-fought litigation.

### III. THE PROPOSED NOTICE PLAN SATISFIES THE REQUIREMENTS OF DUE PROCESS

The parties have agreed to a Notice Plan that is the "best practicable [plan], reasonably calculated under the circumstances to apprise interested parties of the pendency of the action" so that they can exclude themselves, object, get more information about the action, or present their claims. See Philips Petroleum Co. v. Shutts, 472 U.S. 797, 812 (1985). The proposed Notice Plan has been designed to reach as many potential class members as possible.

The parties have agreed to mail the notice to all likely settlement class members found in the County's records. The Mailed Notice will be available in Spanish on request, and both the English and Spanish versions will be posted to a dedicated website at: lakecountyjailsettlement.com. In addition, the Notice Plan provides published notice in the main section of appropriate newspapers, including in publications that reach incarcerated individuals and Spanish speakers. A blank Claim Form will be printed in two monthly issues of Prison Legal News, whose subscribership consists primarily of incarcerated individuals.

In addition, the Published Notice will be posted in the Lake County Jail's holding cells and in the general housing units in a location visible to detainees. The Notice Plan also establishes a call center accessible through a toll-free telephone number that individuals may call to have their questions answered and get assistance filling out a claim form, as well as a non-toll-free number accessible to incarcerated individuals.

Both sides agree that the Notice Plan is the best practicable plan.

### IV. THE PROPOSED SETTLEMENT CLASS SATISFIES THE REQUIREMENTS OF RULE 23 AND WARRANTS CERTIFICATION FOR SETTLEMENT PURPOSES

The proposed Settlement Class satisfies FRCP 23's requirements for certification of a settlement class. See Uhl v. Thoroughbred Technology and Telecommunications, Inc., 309 F.3d

14

978, 985 (7th Cir. 2002) ("the Supreme Court [has] emphasized that although settlement is relevant to class certification, the requirements of Rule 23 must still be satisfied"). Indeed, the Court has already certified substantially the same litigation class under Fed. R. Civ. P. 23(b)(3). See Dkts. 96, 139.

The Settlement Class meets the four prerequisites under Rule 23(a): numerosity, commonality, typicality, and adequacy of representation. The Parties estimate that 30,000 unique individuals are potential members of the settlement classes, making joinder of all members impracticable. Likewise, there are common factual and legal questions on the class members' claims because each claim arises from the Defendants' policies and procedures relating to the holding cells. See Dkt. 96 at 8. Relatedly, the Named Plaintiffs' claims are typical of the claims of the class members. Finally, the Named Plaintiffs and Class Counsel adequately represent the interests of settlement class members. As stated above, the Court has already found that the class satisfies all the prerequisites of Rule 23(a). Dkt. 46 at 6.

The Settlement Class also meets the requirements for certification under Rule 23(b)(3). Common questions predominate over any questions affecting only individual members, and class resolution is superior to individual lawsuits. See, e.g., In re AT & T Mobility Wireless Data Services Sales Litigation, 2010 WL 3190108, at *9 (N.D. Ill. Aug. 11, 2010) (applying Rule 23(b)(3) standards for certification to preliminarily certify class action for settlement purposes). A class action is superior to individual litigation here because class members' claims arise from the Defendants' common practices and procedures. As this Court explained in its Order certifying the class in the litigation, "this dispute contains a set of legal and factual issues that are shared by the members of the class, and class certification is more efficient than multiple individual suits at dealing with these common questions. Indeed, requiring each class member to

bring individual actions would waste time and money." Dkt. 96 at 16-17. The Court's rationale is equally applicable to the Settlement Class. The Class is identical to the litigation class but for the addition of the class period closing date of February 1, 2012.

## CONCLUSION

For the foregoing reasons, the Court should: (1) grant preliminary approval of the proposed Settlement Agreement; (2) preliminarily certify the Settlement Class; (3) order that notices be sent to the Settlement Class per the Notice Plan; and (4) set a date for the final approval hearing on or after December 17, 2012.

                                           Respectfully submitted,

                                           /s/ Michael Kanovitz

August 2, 2012

Arthur Loevy
Michael Kanovitz
Jon Loevy
Samantha Liskow
Julie Thompson
Cindy Tsai
LOEVY & LOEVY
312 North May, Suite 100
Chicago, Illinois  60607
Tel: (312) 243-5900
Fax: (312) 243-5902

*Attorneys for Named Plaintiffs and Settlement Classes*

## **CERTIFICATE OF SERVICE**

      I, Cindy Tsai, an attorney, certify that on August 2, 2012, I filed a copy of PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF CLASS ACTION SETTLEMENT, and thereby caused to be served a copy on all counsel of record via the Court's CM/ECF filing system.

                                                  /s/ Cindy Tsai